*1155 OPINION.
Littleton:
Petitioners do not question the Commissioner’s determination of the March 1, 1913, value of the notes in question, but they contend that no portion of the payments of the face amount of the notes in the years involved constituted taxable gain, profit or income under the Eevenue Acts of 1918 and 1921, for the reason that the face amount of the notes, which in the hands of the vendors of the property represented merely evidence of deferred purchase-price payments, was capital on March 1, 1913, and that subsequent payment thereof represented entirely such March 1, 1913, capital.
When, on January 1, 1913, the petitioners herein sold their respective interests in the property known as the Kosmerl Mine for cash and notes of the Oliver Mining Co., there was an exchange of property for property, a completed transaction. Thereafter, and on March 1, 1913, all that the petitioners had of exchangeable value was the nondnterest-bearing notes of the Oliver Mining Co., maturing annually over a period of 39 years, 10 months. The cost of these notes to the petitioners was the fair market value of the Kosmerl Mine, at the date of the exchange, less the total of the minimum royalties theretofore paid by the purchaser which was allowed as an offset against the purchase price and the cash payment of 1/41 of tiie remainder of the purchase price which was paid on January 1, 1913. The petitioners have offered no evidence to prove the fair market value of the mine at the date of the exchange. On the other hand, they contend that the cost of the notes was 12,700,000 tons of ore of the value of 35 cents per ton or the equivalent of their face value. But such is not the case. The cost of the consideration received in exchange for the mine could be no greater than the fair value, at the date of the exchange, of the mine with which they parted. This seems so obviousfy correct to us that its mere statement is sufficient for present purposes. Lacking evidence of the fair market value of the mine, at the date of the exchange, the logical assumption is that the petitioners received value for value. That is to say, that (he value of the mine was equivalent to the value of the consideration. received therefor. If the value of the mine, at the date of the exchange, is equivalent to the cost of the consideration as well as the value of the consideration, it follows as a necessary corollary that the cost of the consideration is equivalent to the value of the consideration. So, the Commissioner has determined that the cost of the notes to the petitioners was their discounted value, at 5 per cent, compound interest, at the date of exchange, a cost necessarily lower than the March 1, 1913, value of the notes, since at March 1, *1156 1913, the discount period was two months less than at the date of the exchange. •
But, contend the petitioners, the notes of the Oliver Mining Co. were capital assets at March 1, 1913, and any amount received in liquidation thereof or from the sale thereof, subsequent to that date, if not in excess of the face value of the notes, represents a mere return of capital owned on March 1, 1913. Not entirely so. We agree that the notes were capital assets at March 1, 1913, but the contention that the amounts received in liquidation thereof after that date represent a return of capital can only be true if the face value of the notes was the fair market value thereof at March 1, 1913. True, the notes evidence the right of the petitioners ultimately to receive the full amount of their face value; but the amount which the petitioners will ultimately receive does not represent their capital investment in these notes at March 1,1913; rather this investment is represented by the fair market value of the notes at that date. This is the principle laid down in section 202(a) of the Be venue Acts of 1918 and 1921, where, in prescribing the basis for the determination of gain or loss upon an exchange of property, Congress directed that the determination be made upon the basis of the fair market value of the property at March 1, 1913, in the case of property acquired before that date. One might acquire a bond having a par value of $100 at a cost of $25 and having a fair market value, at March 1,1913, of $50. Certainly, it can not be successfully maintained that, because the bond will entitle him to receive $100 if held to the date of maturity, he is entitled to have returned to him, free from taxation, the amount which at March 1, 1913, he was entitled to receive at some future date. Yet this is precisely the thing for which the petitioners contend.
The petitioners further contend that no part of the deferred payments of the purchase price is income within the meaning of the applicable statutes, and that that which the Commissioner treats as income from the notes is in fact a part of the defei'red payments on the purchase price of the mine, a part of the capital itself. But we are not here dealing with deferred payments of the purchase price, as such. The sale of the Kosmeii Mine in 1913 for cash and notes was one transaction, and the conversion of some of those notes into cash during the years in question is another transaction. It is this latter transaction which we have under consideration and it involves simply a disposition, for cash, of notes which the petitioners owned on March 1, 1913, and which had an ascertainable value at that date. To the extent that the proceeds from the notes exceeded *1157 the March 1, 1913 value thereof, which the Commissioner has ascertained to be greater than cost, the petitioners have realized a taxable gain upon the conversion of those notes.

Judgment for the Commissioner.

Phillips concurs in the result only.